### BALCOM v. UNITED STATES. *

(Circuit Court of Appeals, First Circuit. June 18, 1919.

No. 1390.

CRIMINAL LAW ⟨⟩762(3)—INSTRUCTIONS—OPINION ON TESTIMONY.

For the judge to direct the jury's attention to certain lines of investigation and inquiry that might test the question whether a letter introduced by defendant to discredit government's witness was fabricated, even if implying the judge had an opinion thereon, was not error; he expressly leaving to them determination of whether to follow such lines, and, if they did so, what weight should be given to inferences so drawn, and telling them to disregard any opinion expressed by him.

In Error to the District Court of the United States for the District of Rhode Island; Arthur L. Brown, Judge.

Frederick O. Balcom was convicted of violation of the Espionage Act and brings error. Affirmed.

William M. P. Bowen and George F. O'Shaunessy, both of Providence, R. I. (Washington R. Prescott, of Providence, R. I., on the brief), for plaintiff in error.

Harvey A. Baker, U. S. Atty., of Providence, R. I.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. Frederick O. Balcom, the plaintiff in error, hereinafter called the defendant, was indicted and convicted in the United States District Court for the District of Rhode Island for violation of title 1, § 3, of the act of Congress of June 15, 1917 (40 Stat. 219, c. 30) as amended by Act May 16, 1918, c. 75, § 1, 40 Stat. 553, and known as the Espionage Act (Comp. St. 1918, § 10212c), which, among other things, makes it an offense to—

"willfully make or convey false reports or false statements, or say or do anything except by way of bona fide and not disloyal advice to an investor or investors, with intent to obstruct the sale by the United States of bonds or other securities of the United States or the making of loans by or to the United States."

---

The defendant was charged in the first count in the indictment with committing this offense on the 21st day of June, 1918, at Providence, in the state of Rhode Island, by willfully making and conveying the following false reports in the presence of Florence H. Breslin and divers other persons, with the intent to obstruct the sale by the United States of bonds and securities of the United States and the making of loans by the United States, viz.:

"When you women learn that when you stop paying for wars, you will have no wars. The United States Liberty Bonds are not worth the paper they are written on. When it comes time for the government to redeem your Liberty Bonds, they will have no money to give you. Then they will make some law to cover that, and then what are you going to do about it? Liberty Bonds, Thrift and War Stamps are just so much scrap paper; you might just as well throw your money in the wastebasket."

The only error assigned relates to a portion of the charge of the presiding judge to the jury in which he commented upon certain testimony of the defendant.

In support of the count in the indictment upon which the defendant was convicted Florence H. Breslin, in whose presence the defendant was alleged to have made the statements with which he was charged, was a witness. The defendant, for the purpose of discrediting her testimony, testified in his own defense that in May or June, 1918, she called at his office and requested him to perform a criminal operation upon her sister, Eva Breslin, who she stated was seven months pregnant; that she told him that a certain married man was responsible for her sister's condition and would pay the bill; that the defendant refused to perform the operation, and that Miss Breslin thereupon told him that he might be sorry. He also testified that on July 8, 1918, he received the following blackmailing letter signed "F. C.," which was placed under his door by some person to him unknown—

"July 8. Dear Sir:—If I remember correctly, I have heard you make some disloyal statements. I am at present in need of $500. If you will meet this emergency, I can easily forget our differences. A good meeting place will be the park entrance on Broad street, near Miller avenue, on the Wednesday following this date, at 10 a. m. You will probably remember me when we meet and will need no introduction.

"Very truly, F. C."

In commenting upon the testimony of the defendant in relation to the alleged threat and the letter, the court charged the jury as follows:

"If a charge of this kind was to be made, would it not be natural to have investigated and made a thorough search as to the acquaintance and relationship of the persons who were charged to be participants in this attempt at a criminal operation? If there was a likelihood of a case of blackmail following a matter of this kind, would not the natural thing have been to have made an investigation, to have called the matter to the attention of attorneys or the police, and to have had the thing run down and all of the matter examined? There is no testimony in this case of that character, or anything to indicate the intimacy of these people. It all rests upon the question of what the doctor says he was told."

This instruction is the only error assigned.

The defendant contends that this statement was not only argumentative, and likely to mislead the jury as an expression of opinion by the

presiding judge, but also that it was a statement that the law required the defendant under the circumstances to do the things which the court stated there was no testimony in the case that he had done. We can find no basis for this contention in the instruction which was given, nor do we think that the jury could have possibly understood that they were, as a matter of law, to find that any course of conduct under the circumstances was to be pursued by the defendant. Clearly the presiding judge was only attempting to call the attention of the jury to the consideration of whether or not certain inferences might naturally be drawn from the admitted failure of the defendant to do certain things.

An important part of the testimony offered by the United States to sustain the charge against the defendant was Miss Breslin's, and if her credibility could be destroyed by showing that she was the author of the blackmailing letter, the case against the defendant might have failed.

It was not reversible error for the court, under the circumstances, to direct the minds of the jury to certain lines of inquiry as to whether the testimony of the defendant in regard to the receipt of the letter was fabricated or not. This the court did in the form of questions, and did not intimate any opinion further than appears by them. Even if the questions implied that in their statement the court had an opinion in regard to answers which a reasonable mind would return to them, this would not constitute reversible error, as has been settled by numerous decisions in the federal courts, with the qualification in all of them that the court must make clear to the jury that the ultimate decision upon all questions of fact rested with them, irrespective of any opinion which the court might entertain. This is well established and does not need the citation of any authorities; but they are collected in Morse v. United States, decided in the Fourth Circuit and reported in 255 Fed. 681, —— C. C. A. ——. In several places in the charge the presiding judge forcibly impressed upon the jury that they were the sole judges of the facts and of the credibility of the witnesses.

As bearing upon the credibility of Miss Breslin as a witness, the minds of the jury were directed by questions of the court, as will appear from other parts of the charge beside that which is assigned as error, to the circumstances surrounding her alleged visit to the doctor's office and the testimony of the doctor in regard to the receipt of the blackmailing letter. In regard to the letter the jury were instructed:

"The next thing which appears in the case is a letter, which the doctor says was put under his door; his wife says the door of the office. You have seen that letter, gentlemen, and you have heard the testimony; a blackmailing letter, because it is blackmail to try to extort money from a person by intimation or threat of criminal prosecution. Was it a likely act, a probable act, following from such a refusal—an attempt to blackmail on another ground, and to extort money?

"As to the history of that letter, as to its appearance, the first testimony in the case, and the only testimony as to its first appearance on earth, is the testimony of the doctor and his wife that it appeared on the floor of the office. There is no postmark. There is nothing on the envelope to indicate that it came through the post office, and you may infer, I presume, from that fact,

that it must have come from some messenger. Did it come from the person who had been in asking for this operation? The testimony in the case is that on the 27th or 28th of June this person received a serious injury, which, according to the witness' testimony and that of her sister and physician, absolutely incapacitated her from leaving the house, so that during all this period she was an invalid.

"If that letter did not come from this person (the initials F. C. correspond to the name of this witness), whence did it come? If it is not accounted for by any previous action of this person, how can you give it any influence whatever, gentlemen, as affecting her credibility? And that is its only legitimate purpose in this case."

In another part of the charge the court stated to the jury:

"I will add to that, gentlemen, that the court is not to decide upon the facts. I have expressed to you, and intend to express to you, nothing as to my personal opinion of the case; and if I have stated anything which might indicate to you what my opinion is, you will disregard it and make up your own opinion. The judges of this court have the power, if they see fit, to state their opinions on the facts, leaving the jury the full right to determine upon the facts."

An issue was raised by the defendant in regard to the credibility of the government's witness by the introduction of the letter in question, which the government claimed had been fabricated; and this in turn became an important issue at the trial as bearing upon the issue of credibility.

We think it not reversible error for the presiding judge to direct the attention of the jury to certain lines of investigation and inquiry that might test the question whether the letter was fabricated, leaving, as the court did leave, solely to the jury the determination of whether they would follow such lines of inquiry and investigation, and, if they did so, what weight should be given by them to the inferences that might be drawn from the admitted or proven facts.

We think that, taking the portion of the charge which is assigned as error, in connection with the whole charge, and particularly that portion in which the court impressed upon the jury that they should disregard any opinion that might have been expressed by the court, and make up their own opinion of the testimony in the case, and the disavowal of any intention to express any personal opinion upon any facts involved in the case, the rights of the defendant were fully protected, and there was no error.

The judgment of the District Court is affirmed.